BEFORE THE JUDICIAL PANEL
ON
MULTIDISTRICT LITIGATION

IN RE BRISTOL BAY, ALASKA, ) DOCKET NO. 249
SALMON FISHERY ANTITRUST )
LITIGATION )

OPINION AND ORDER

BEFORE JOHN MINOR WISDOM, CHAIRMAN, AND EDWARD WEINFELD, EDWIN A. ROBSON, WILLIAM H. BECKER*, JOSEPH S. LORD, III*, STANLEY A. WEIGEL, AND ANDREW A. CAFFREY*, JUDGES OF THE PANEL

PER CURIAM

This litigation consists of four actions pending in two different districts: three in the Western District of Washington and one in the District of Alaska. The plaintiffs in all four actions are salmon fishermen in the Bristol Bay, Alaska, salmon fishery. All the defendant companies are owners of canneries and fishing fleet maintenance and support facilities on Bristol Bay. Nine of these defendants are common to every action.

The complaints in all four actions contain allegations that the defendants violated the federal antitrust laws by conspiring to monopolize the market for salmon caught in Bristol Bay and to fix the price they paid to fishermen for salmon. Plaintiffs further allege that this monopoly was

---

* Judges Becker, Lord and Caffrey were unable to attend the Panel hearing and, therefore, took no part in the consideration or decision of this matter.

perpetuated through illegal tie-in arrangements whereby the extension of credit and the provision of maintenance and support facilities were contingent upon an agreement to sell all salmon caught by a fisherman to a particular defendant. The Washington actions cover the fishing seasons from 1970 to 1973, while the Alaska action covers the fishing seasons from 1971 to 1974. Defendants have filed counterclaims under the federal antitrust laws in all four actions alleging unlawful restraints of trade, including price-fixing, blockades, threats and other forms of coercion.

The first action was filed in the Western District of Washington as a class action on behalf of all members of the Alaska Independent Fishermen's Marketing Association. Class certification was denied in that action and it is currently proceeding with a single plaintiff. Two more actions were subsequently filed in the same district by 36 and 140 fishermen, respectively, who were included in the purported class. Thereafter, the Alaska action was filed as a class action on behalf of all Bristol Bay salmon fishermen who are not plaintiffs in the first three actions. This putative class is estimated to include 2,000 members. A motion for class certification and a motion to transfer the Alaska action to the Western District of Washington under 28 U.S.C. §1404(a) are presently under consideration by the Alaska court.

Pursuant to 28 U.S.C. §1407(c)(i) and Rule 8, R.P.J.P.M.L., 65 F.R.D. 253, 258-59 (1975), the Panel issued an order to show cause why these four actions should not be transferred to a single district for coordinated or consolidated pretrial proceedings. The defendants favor transfer of the litigation and urge the Western District of Washington as the transferee district. The Washington plaintiffs and the Alaska plaintiffs oppose transfer. In the alternative, they favor their respective districts as the transferee forum.

We find that these actions involve common questions of fact and that transfer of the Alaska action to the Western District of Washington for coordinated or consolidated pretrial proceedings under Section 1407 with the three actions pending there will best serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation.

Plaintiffs in both the Washington and Alaska actions recognize that many common factual questions are involved in these actions. Nevertheless, plaintiffs contend that a comparison of the Alaska action to the Washington actions reveals significant uncommon facts which make transfer inappropriate. In particular, they point out that the 1970 fishing season is excluded from the claims in the Alaska action. That season, they argue, was unique because of an exceptionally

large catch and therefore a substantial amount of discovery in the Washington actions will be directed toward it.

The Alaska plaintiffs maintain that because of the similarity among the Washington actions, in essence only two actions are involved here -- one in Alaska and one in Washington. Relying on In re Scotch Whiskey Litigation, 299 F. Supp. 543 (J.P.M.L. 1969), they stress that transfer is unwarranted since defendants have failed to demonstrate that the minimal number of actions in this litigation share unusually complex questions of fact. They further argue that attempts at voluntary coordination among the parties have made transfer unnecessary and that transfer of their action to Washington would impose financial hardships on the low-income fishermen residing in remote areas of Alaska. Finally, they urge the Panel to delay its decision until the class certification and Section 1404(a) motions are decided, or to select the District of Alaska as the transferee district in light of the pendency of these motions.

These arguments are not persuasive. An analysis of the complaints in the four actions before us reveals that they raise sufficiently complex common questions of fact to justify transfer under Section 1407 despite the lack of a complete identity in the time periods involved. As is often true in multidistrict antitrust actions, questions concerning the

existence, scope and effect of the alleged conspiracy among the several defendants necessitate transfer in order to prevent duplicative discovery, eliminate the possibility of conflicting pretrial rulings and streamline the remainder of the pretrial proceedings as well. See In re Japanese Electronic Products Antitrust Litigation, 388 F. Supp. 565, 566-67 (J.P.M.L. 1975). Of course, the transferee judge has the broad discretion to allow discovery on issues unique to any action to proceed concurrently with the common discovery. In re Republic National - Realty Equities Securities Litigation, 382 F. Supp. 1403, 1405-06 (J.P.M.L. 1974).

Though voluntary coordination among the parties as a means of avoiding duplicative discovery is commendable, if the actions under consideration are otherwise appropriate for coordinated or consolidated pretrial proceedings, the Panel prefers to place the actions under the control of a single judge in order to ensure that the objectives of Section 1407 are met. See In re Celotex Corporation "Technifoam" Products Liability Litigation, 68 F.R.D. 502, 504 (J.P.M.L. 1975); In re Midwest Milk Monopolization Litigation, 379 F. Supp. 989, 990-91 (J.P.M.L. 1974). In any event, defendants assert that they have already been subjected to duplicative discovery requests notwithstanding plaintiffs' contention that voluntary coordination can be adequately utilized here.

The Alaska plaintiffs' concern that transfer under Section 1407 will impose extreme financial hardships upon them is unwarranted. Since a Section 1407 transfer is for pretrial proceedings only, there is usually no need for the parties and witnesses to travel to the transferee district for depositions or otherwise. See, e.g., Fed. R. Civ. P. 45(d)(2). Furthermore, the judicious use of liaison counsel, lead counsel and steering committees will eliminate the need for most counsel to travel to the transferee district. See Manual for Complex Litigation, Part I, Sections 1.90 - 1.93 (rev. ed. 1973). Indeed, one of the purposes of coordinated or consolidated pretrial proceedings is to streamline the efforts of the parties and witnesses, their counsel and the judiciary in order to effectuate an overall savings of cost and a minimum of inconvenience to all concerned. In re Nissan Motor Corporation Antitrust Litigation, 385 F. Supp 1253, 1255 (J.P.M.L. 1974).

Nor do we believe that in the circumstances of this particular litigation should we defer our decision until the Alaska court decides the motions pending before it. As the Panel has previously held, matters concerning class action certification should be included in the coordinated or consolidated pretrial proceedings in order to prevent inconsistent rulings and promote judicial efficiency. See, e.g., In re Piper Aircraft Distribution System Antitrust Litigation,

405 F. Supp. 1402, 1403-04 (J.P.M.L. 1975). And, inasmuch as Sections 1404(a) and 1407 can be used cumulatively in any given litigation, the motion for transfer under Section 1404(a) can be presented to and determined by the transferee judge. See Pfizer Inc. v. Lord, 447 F. 2nd 122 (2nd Cir. 1971).

The Western District of Washington is clearly the most appropriate transferee forum for this litigation. Since the corporate headquarters and records of all defendants are located in or near that district, as are, during most of the year, the personnel of defendants likely to be called as witnesses, the majority of discovery will most likely take place in that vicinity. Moreover, three of the four actions in this litigation are already pending in the Western District of Washington and those three actions are further advanced than the one in Alaska. See In re Joseph F. Smith Patent Litigation, 407 F. Supp. 1403, 1405 (J.P.M.L. 1976).

IT IS THEREFORE ORDERED that the action listed on the following Schedule A and pending in the District of Alaska be, and the same hereby is, transferred to the Western District of Washington, and with the consent of that court, assigned to the Honorable James M. Fitzgerald, sitting by designation under 28 U.S.C. §292(b), for coordinated or consolidated pre-trial proceedings pursuant to 28 U.S.C. §1407 with the actions pending in that district and listed on Schedule A.

SCHEDULE A                                              DOCKET NO. 249

### WESTERN DISTRICT OF WASHINGTON

Peter Mosness v. Alaska Packers Assn., et al.          Civil Action No. C74-366S

Ronald Aliotti, et al. v. Bumble Bee Seafoods, et al.  Civil Action No. C75-399S

Elmer R. Adams, et al. v. Bumble Bee Seafoods, et al.  Civil Action No. C75-9S

### DISTRICT OF ALASKA

Donald F. Nielsen, et al. v. Alaska Packers Assn., Inc., et al.  Civil Action No. A75-69